Your honors, may it please the court, my name is Ben Hall. I'm here today on behalf of my client, EMC Insurance Companies. You need to speak up. Yes, sir. I'm here on behalf of my client, EMC Insurance Companies. That's not really a microphone. That's to record. I'm here today to respectfully request that the court reverse the trial court's decision because we don't believe that the Made Hall Doctrine applies in the way in which the court applied it in this case, and even if it did, the court erred in allowing that argument to be made in this particular proceeding. This is a case about whether we want things done the right way or the wrong way. Here, EMC did everything right. They went out. They thoroughly investigated this loss. They concluded that they believed the fire was Entergy's fault. Nonetheless, they went ahead and stroked checks to their insurers north of $200,000 because Entergy did not accept liability. I'm not saying Entergy did anything wrong in this case either because they had a theory as to liability. But if you run this out all the way, if we start applying Made Hall in this context, then a first-party insurance carrier never has any incentive to settle its insurance claims, and a tort feeser or potential tort feeser never has any incentive to... Counsel, let me ask you, if the Made Hall Doctrine does not apply here... Yes, sir. What would prevent the insured from then seeking recovery from Entergy? Well, the insured's been paid $230,000 as related to this loss. What if they felt they hadn't been fully compensated? Well, they could seek recovery. In fact, the statute of limitations has not run. It would run later this year. Wouldn't that contravene the whole purpose of the Made Hall Doctrine if they could seek recovery from Entergy? I think it's important. We're calling this Made Hall Doctrine, but I think we need to look past the words and look at what's actually happened here. You know, football means one thing in America. It means something totally different everywhere else in the world. And the Made Hall is always a battle about whether the carrier, the first-party carrier, gets money back that it's insured is ultimately going to get paid from the tort feeser. And that's not what happened here. EMC went out and paid the money that it believes Entergy was at fault for and is simply seeking to recover that money. So I think it's an error to even call this Made Hall because that's not what happened. I cited in my brief, there's 96 Arkansas cases on Lexis that have the term Made Hall in them. Every one is a UIM, a MedPay, or a workers' comp case where, again, the first-party carrier has gone out and paid benefits and then later on seeks to recover that money from the settlement. Let me come at it a little different, but I think the same question. Riley seems to be the case everybody considers significant. And Riley is all wrapped up in lien concepts. Yes, sir. This is not a lien claim, or is it? No, it's not a lien claim. There's no lien at issue in this case. No, sir. This is a house burned down. $125,000 was paid for the house itself. $55,000 was paid for. And you're not getting in line with the insured? No, sir. Or in a comp situation? No, sir. And again, as I brought up in my brief, this is a situation where it's not the insured and their carrier fighting over the money. It's a third-party attempting to use an insurance contract to shield from liability. What case has ever held that an Arkansas court cannot decide the make-whole question in the context of a case such as this where a lien is not being asserted? Correct. There's not a case either way, and that's the point of my brief. We have these 96 cases, and not a single one of them goes into that. I'm mostly a civil defense lawyer. Because you don't need a lien, but you may need to prove in this case that since you're standing in the shoes of the insured, I can understand Arkansas law requiring you to prove or the evidence to support the notion that the insured has been made whole. This notion that that judicial determination has to be before you bring your lawsuit, that strikes me as lien talk. Well, and again, I'm glad you brought that up because I make this argument that this issue was never raised. And the trial court's ruling was that the day this lawsuit was filed, it was barred. Their argument was the day that this lawsuit was filed, it was barred. Why was it never brought up? Well, but counsel, I mean, Judge Loken's right that there's no cases that directly address this. But Riley, the language of Riley, and that's what's concerning to me. I think that you may lose under the language of Riley. It says, and this is the way it talks, the insurer's right does not accrue, which is why the district court said it's not barred. It used the word accrue. Yes, sir. And then it goes on and says that complete recovery by the insured must occur, quote, before the insurance company is entitled to recovery and subrogation. So it makes it sound like you don't even have a lawsuit until it starts. I think you're missing the word lien. Well, not in these quotes. And I think there's a difference. The lien arises but can't be enforced. Yes, sir. And I think there's a difference between subrogation in that context and subrogation in the reimbursement context. And there's cases to that effect. But, again, and I cite this case in my report. Did you argue this to the district court? Well, this notion that you can't divorce the language in Riley. I just argued that this was an oral motion. I mean, the concurring opinion in Riley tried to clarify this. Yes, sir. This was an oral motion. I just argued that Riley did not apply in this context. I argued generally that it was a first-party carrier trying to seek recovery money they already paid out to. It's insured from a settlement with the tort feeser. And there's a battle between an insured and an insured. This is almost like they're a third-party beneficiary to our insurance contract. And I did cite in my reply brief, I'd like to point out, it's Douglas B. Adams Truck. And this is an Arkansas Supreme Court case. It's 345-R-203. And in that case, the case – Are you talking about something that's in your briefs? It's in my reply brief, yes, sir. But I believe it touches on the difference between property damage and pain and suffering and mental anguish claims. Before we get there, I want to follow up on this because it seems there's an easy answer here to all of this, which is you can introduce proof that they've been made whole. You could send it out to your insured and say, did that 200 and – I don't remember, 13,000, 3,000. I don't remember the exact amount. Did that make you whole? Do you have any other claims or injuries that you want to address or you can get some sort of judicial declaration? This is not tough to satisfy. Now, we could disagree about what Riley says in particular and whether it incorporates that lean or non-lean concept. But it's a pretty easy fix to go out and do that and then provide that proof. Why didn't you do that? Why did I not do that or why didn't you? Why didn't counsel do that? EMC does generally not do that. I can state that. This was at the end of trial, right? Yes, sir. So this is a question of what did the record support at that point? Correct. What the record supported is that – I did not attempt to solicit that. Pardon? I did not attempt to solicit. But they advised you of that because, as I recall, there was some sort of pretrial paper. I don't remember exactly what it was that basically said we're going to possibly assert the made whole doctrine here. So it's not as if you didn't know that that was coming. Yes, sir. I would point out that that was in a pleading that was not authorized by the court. This trial was continued for like a year. They did not authorize new pretrial disclosures. So I don't even think that anything put in that argument was properly before the court. Let me ask a question. Yes, sir. We have evidence that your client paid $204,000. Yes, sir. Checks are in the record. We have a motion from Energy asserting that the client only spent $35,000. Yes, sir. Now, if that isn't a record that would permit a jury to find that the insured was made whole, I can't imagine what would be. And I specifically made that argument, Your Honor. You're correct. As to the real property damage, the check was $125,000 and change. Mr. Blakely testified in his deposition and at trial that he only spent about $36,000 of that money to almost completely repair his house. So as I understand, we have a record. We have an end-of-trial motion practice. Yes, sir. In which the court disregarded what the evidence would show with regard to made whole and dismissed your claim simply because there was no judicial determination before the suit was filed. Yes, sir. I would also point out that Energy made that motion prior to trial as well, the $36,000, that we should be capped at $36,000. That was a pretrial motion and a post-trial motion. And that was part of my DuPuy v. Wallace inconsistent positions doctrine. You know, you try to label it a judicial estoppel. I just think it's an admission against interest. Yes, sir. Counsel, supposing that Arkansas law required you to get a judicial determination under the made whole doctrine, even if that's true, why was this case dismissed with prejudice? I do not know, Your Honor. It seems to me you could start over and satisfy that law. I think that the dismissal comes from the fact that this was made via oral motion and it was literally a two-minute type motion with a two-minute type response. The judge went out into the chamber. She came back and she issued her ruling and then issued her written ruling a couple weeks later. Again, I think, as I've said all along, this is a case that, one, has significant ramifications to Arkansas law. We would be massively expanding this doctrine and applying it in a way that's never been applied. There are whole law firms that their practice is property damage, subrogation. That's all they do. Go back to my first question. Yes, sir. It's your position that it's acceptable under Arkansas law for you to demand subrogation and then to have the insured go after them for further damages? I didn't say that. I said that they could do that, and if they did at that point, then those suits would be consolidated. But that's the whole purpose of the Batehold Doctrine is to prevent them. On unliquidated damages, I believe. And Riley says that. I mean, Riley says exactly what Judge Graz is getting at, which is the whole point is, or at least one of the points, there's two or three purposes, but one point is to prevent the insured from going after them. Correct. Two parallel suits. Sure. And they would be consolidated. But again, it's unliquidated damages. I've been to a million made whole hearings, and it's all I broke my arm, I broke my shoulder. My arm's never going to be the same when the judge says, yep, I can't enter a ruling that you've been made whole. In this Douglas B. Adams trucking case that I cited, it's 345-Art-203. The tortfeasor's carrier attempted to settle the case with the potential plaintiff and issued a few hundred thousand dollars in payments. They couldn't get it settled. The plaintiff filed suit. It goes to the jury on an itemized verdict form. And what happened is the jury awarded less for the lost wages than the carrier had paid them. So there's like a $30,000 difference. And the trial court said, well, we'll just set this off against the pain and suffering. And the appellate court said, you can't do that. That's unliquidated. You can't put a number to a number. You can't put 30 grand to my back pain. You can put 100 grand and 100 grand on a house, but you can't do that. And the court did. I think that's an important distinction in that case, and that's why I cited it in my reply brief. I'd like to save the rest of my time unless you all have any questions. Thank you. Thank you. Mr. Baker. Thank you, Your Honors. J.C. Baker for Entergy. Let me go first to Riley and the purpose for the made whole doctrine. There are two that are set forth. They're real simple. Number one, to prevent the insured from obtaining a double recovery. That would be your lien scenario where the insured takes a settlement from a third-party defendant, and now the insurance company tries to come in and assert a subrogation right. That does not exhaust the made whole doctrine. The second purpose is to prevent the insurance company from, so to speak, jumping ahead in the line, jumping ahead of the insured, which is our case, and asserting a claim. Well, you say that. Where do I go for that? Certainly Riley doesn't talk about that. It sure does. I'll read the quote. It says that the purpose of the made whole doctrine is, first of all, an insured should not recover more than that which fully compensates, and an insurer should not recover any payments that should rightfully go to the insured so that he or she is fully compensated. That's all part of double recovery. I mean, that's the first. The second part is not a part of double recovery because that's the scenario where the insured. What is wrong with litigating in this case whether the insured was made whole? Where does Riley prevent that? Riley clearly says that the insured and the insurer are perfectly free to make an agreement that will satisfy the make whole requirement. There are three ways under Riley to establish that the insured has been made whole. Okay, but why isn't this a fourth way? Because Riley says there's three ways. One, that there's an agreement. How can you divorce reasoning from context? What is the fourth way? Pardon? The fourth way is if there are no personal injury damages or unliquidated damages, if it's just a property case and the only question is whether the property damage coverage paid exceeded the remedial expenses. Okay. That can easily be litigated in the suit. The insurer can sue standing in the shoes of the insurer. All right. And the evidence can show that the insured was made whole. Very easy. It doesn't because it's an apples and oranges problem. Our motion in trial is that. What's the apple and what's the orange? Because the actual cash value paid by an insurance company does not define the insured's total damages. For instance, they paid for repairs. The Blakeleys in a lawsuit they brought would not be limited to repairs. You can litigate that in this case very easily. No, because they're the master of their complaint. They sued for repair damages. The Blakeleys could sue for fair market value diminution, which may be more. The Blakeleys under Arkansas law could have sued for discomfort and annoyance, which could have been more than the actual cash value they received from this insurance policy. Sure. But, you know, that's how you litigate. Either they put the Blakeleys on the stand or you depose them. Somebody deposes them. Here's the missing link. Under Arkansas law, a subrogating insurance company cannot recover more than they paid under the policy. So the Blakeleys may have $300,000 in damages that would be required to make them whole. EMC, when it brings the lawsuit in its own name, cannot sue for more than they paid under the policy. So you don't have this one-to-one correspondence between what they are suing for and the amount necessary to make the Blakeleys whole. You're not understanding what I'm saying. It's not one-to-one. It's that EMC can't recover from your client unless there is a finding that the insured has been made whole. That's right. Not a prior judicial determination, a finding of fact. And I don't think, certainly Riley doesn't preclude that. Riley speaks in terms of the right to subrogation does not arise, does not accrue until that determination is made. It says the lien arises but it can't be enforced. It's all lien because there was a line formed. Both the insured and the insurer were attempting to recover. This is not a lien case. No. This is a case where the insurance company is jumping in front of the Blakeleys and say, we want first dibs on the payment. And the second purpose for the made whole doctrine is to prevent that from happening. They have to go to court and get a determination that the Blakeleys have been made whole to ensure that they are not going to collect payments that should properly go to the Blakeleys. I don't understand why you don't do it in this case. You can third party the Blakeleys in. It's not my duty. Riley says it's the insurance company's duty. But if he has the duty, then prove it in this case. That's why we move for a dismissal under Rule 50. They didn't do that. That's their duty. Oh, no. The dismissal, I thought, you disagree with counsel. Counsel, I thought, agreed with me that the only basis for the dismissal was the determination was not prior to suit. Because this oral motion was made at the close of the evidence, right? At least the close of the plaintiff's evidence. That's right. And so if it's close of plaintiff's evidence with the question under my hypothesis. That's not the way we worded our motion. We worded our motion that they had not proven that the Blakeleys had been made whole. Therefore, they did not have a right to recover in subrogation. And the court granted that motion. But because it accepted the proposition that the determination had to be pre-suit. The court did not analyze the evidence. It's close of plaintiff's case was at a prima facie case. Close of all the evidence. I think the court did consider that EMC was asking the court to make that determination at the time that our motion was made. If you'll recall, the court said that it found that that would be prejudicial to the defendant. And she was not going to take up the issue of whether the Blakeleys had been made whole at that time. In other words, the court said, you've waited until after you rested and after the defendant has made a motion. I'm not going to determine at this time whether they've been made whole. Wait. This issue arose pre-trial, right? The question of whether there had to be a prior judicial determination. Why was there a trial if there had to be a prior judicial determination? Why did there have to be a trial? Yeah. If there had to be a prior... If EMC didn't have a judicial determination to make whole before the case was filed, why did we have a trial? All right. So, at the time they had rested, the window closed on their time. No, no. Before the jury's chosen. Why are we wasting a jury's time? I think that hypothetically that if they could have convinced the court at any point in time before they rested that the Blakeleys were made whole, then they're the real party in interest and they have a right to go to the jury, but they rested without doing so. Well, on the settlement agreement, you could have... I mean, you could have... They could have, in mid-trial, they could have obtained a settlement agreement after the pre-trial papers told them that they need to be... They could have walked... ...in here with the made whole doctrine. ...and handed an agreement. Or an agreement of some sort. I can't really say we've been made whole right up to the moment they rested, but they failed to do so. I thought the district court ruled that the plaintiff has no standing to bring a subrogation claim because the right to subrogation does not accrue until after the legal... You know, in other words, the case couldn't be filed. It should have... There should have been 12-B-6 dismissal. Well, that was the court's standing analysis. Do you think it was really a question of standing or is it a failure of proof? I'm sorry, can you... Do you think it was really a question of standing or was that... Well, she ruled on both, and our motion was simply a Rule 50 motion. The court raised the standing issue on her own. Grabbing onto the arising in accrual language in Riley, which is standing, she didn't specify whether it's Article III constitutional or prudential or statutory. But she did rule she had no standing because the right of subrogation had not accrued. And you're right, she could have done that at any point in time in the case. She had the right and the obligation to determine independently whether there was a case or controversy to be tried in her court. She didn't make that ruling until after they rested. And I'm not sure, just as a note, I'm not sure that we're talking about standing in the same way. A lot of states define standing as having the ability to sue, for instance, as a third-party beneficiary or as somebody suing under a subrogation right. I don't know that we're talking about Article III standing or that the district court intended to use standing in the exact same way. Maybe I'm wrong about that, though. Well, the court just said standing. And, of course, read it as a defense. It's an absolute defense to the action. The action fails to state a claim unless you have an existing judicial determination. People say standing. You don't call that standing. It's colloquial, if you will. But why isn't your damage cap motion an evidentiary admission against interest that the insurer has been made whole? For the same reason I stated earlier, you're comparing apples and oranges. There are three different numbers that we're dealing with. Number one, what EMC proved at trial, which is just $36,000, not in total damages, in cost of repair, before a second fire happened to burn the house down. The Blakeleys would not be limited in action brought in their own name to the amount they spent in repairs before the second fire happened. They could sue for fair market value diminution, which could be significantly more than what they paid in repairs before that fire happened. Is that the talent case? Pardon? Isn't that the talent case? I'm sorry? Isn't that supported by the talent decision? I'm not sure. I'm not sure of the reference that you're hanging on to. But, again, they would also have a cause of action that wasn't even raised by EMC in its lawsuit, which is the recovery in the Felton Oil v. Gee case for discomfort and annoyance. So that's an open-ended category of damages. So we're trying to compare the amount that would make the Blakeleys fully compensated for all of their damages, which has not been determined by any court, and EMC didn't even sue for all the potential categories of damages that the Blakeleys could have sued for. And they're trying to take an argument that we made that EMC has only proven, in its case in chief, $36,000, as being the same as the total quantum of damages that would make the Blakeleys whole. They are not the same, and those positions are not inconsistent. Counselor, are we allowed to address the issue of whether this case should have been dismissed with prejudice or without prejudice? I think that, and I certainly recognize that, generally, subject matter, jurisdiction, Article III standing is dismissed without prejudice. I don't think that a circuit court is obligated to look at that issue where it has not been challenged. And this issue hasn't been challenged in this case. EMC has been seemingly content with the fact that this was dismissed without prejudice. This issue has not been argued. It has not been briefed. There's not been any— You mean with prejudice? Pardon? You just said without. Did you mean with? Right. The fact that the court dismissed with prejudice has not been challenged. Well, and in part, it would depend, too, on our standing analysis. Because I think that you might be wrong. If it's Article III standing, we can correct it and say without prejudice no matter if anyone brings it up. But when you're talking about the standing, you know, do I have a right to sue, that is not jurisdictional. So I think that would be relevant. That's right. And that's where you get into all of the cases that talk about standing, and is it a 12B1 or is it a 12B6? And you can get into prudential and statutory. And subrogation is based upon an Arkansas statute. 2379-146 is the statute that creates the right of subrogation in casualty insurance policies. And according to Riley, there's no right of subrogation arising under that statute unless the insured has been made whole. So I think there's an argument that there's no statutory standing here. And those cases are to be dismissed with prejudice. So I believe there was an adjudication. This isn't just simply Article III standing. They did not meet an essential element of their burden of proof. That's an adjudication. The ruling on our Rule 50 motion. We think their failure to obtain any declaration that the plaintiffs have been or the Blakeleys have been made whole before they rested or otherwise present a settlement or an agreement. By the way, a settlement would be them getting with their insured, and agreeing we'll split this up 50-50 or 60-40, something like that. All of that would take care of this requirement, and their right of subrogation would arise. They failed to do so. They tried their case. They rested. And at that point in time, their failure to do so was fatal to their case, and we believe the district court properly dismissed it without prejudice. I'm out of time. Thank you. Appreciate it. Thank you. I would start off with the court's order. As Judge Loken correctly picked up twice in there, Judge Hickey says that she is dismissing because prior to this lawsuit being filed, there was no judicial determination that they were made whole. It didn't have anything to do with the proof at trial. Mr. Baker is one of the finest lawyers in Arkansas. If he thought that this argument would have worked, he surely would have filed a motion to dismiss. He surely would have filed a motion for summary judgment. As I pointed out in my brief, I think this is another reason they've waived their right, the inconsistent position with the damages. But we litigated this case for two years, depositions in three states, multi-day trial out of town, just didn't raise this issue, and they could have filed a dispositive motion if, under their motion and the judge's ruling, it was required prior to this lawsuit being filed, that would have been a slam dunk. In regards to the $36,000, that's an incorrect statement. EMC paid out $125,000. That check was put into evidence. It can go and recover that whole amount of money. That's what it paid out. I think all he was saying was that $36,000 is the evidence of what was paid to repair the house, I guess, before the second fire and not necessarily everything that the insured might claim if it brought a separate action. Well, that's not correct. The $125,000 was paid completely to the Blakelys. That check was put into evidence. He had only spent $36,000 at the time the second fire occurred. But the question is, does $125,000 make him whole? No, I understand that. That's a different question. Well, I thought that was what was being addressed. To me, it seemed to me that he was indicating that EMC had only paid $36,000 out, but when they had, in fact, paid $125,000. In regards to the Talent case, that's another UIM bodily injury case. That's Farm Bureau v. Talent is, I believe, what you were speaking of. And, again, it's just totally different. These are unliquidated damages in a battle between an insured and their insurance carrier over whether the carrier can go back and assert a lien against a potential settlement. And that's not what we have here. Again, like I said, football means one thing in America. It means something else to the rest of the world. We're calling this made whole. It's not made whole. I would just wrap up, again, with my waiver argument. Litigated it, never raised it, and then their damages argument. What's the proposal here, though? I guess your point is if you don't raise it in your motion to dismiss, it's forever waived. Because they viewed it as a failure of proof. Yes, sir. The district court used standing loosely but seemed to suggest it might be a failure of proof because had they come forward with a settlement agreement, that maybe there would have been enough there, although you say that it should have been dismissed at the beginning. She says twice in the order. It's in the very last paragraph, and it's in the middle paragraph on the next to last page. They failed to obtain a judicial. They knew there was no judicial determination all along. They deposed Mr. Blakely a year before the settlement. But they misunderstood the law, maybe. I mean, they thought it was a failure of proof. It turns out it's a precondition. Does that mean they waive it forever because they bring it up after you rest your case? I think that the combination of what happened in this case, the continuing to litigate against the carrier because they chose that to be beneficial. I assume your argument was that the court made no ruling on failure of proof at the conclusion of trial, in which case the remedy is obviously a new trial. Yes, sir. Her ruling was contingent on the fact that there was nothing done prior to this lawsuit being filed, which had nothing to do with it. There was never going to be proof that that happened. Anything else, your honors? Thank you. Thank you, counsel. Argument has been helpful, and we'll take it under advisement.